```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/      )
FENFLURAMINE/DEXFENFLURAMINE)        )    MDL NO. 1203
PRODUCTS LIABILITY LITIGATION        )
_____)
                                     )
SHEILA BROWN, et al. v. AMERICAN     )    CIVIL ACTION NO. 99-20593
HOME PRODUCTS CORPORATION            )
                                     )
This document relates to:            )
                                     )
DUWANDA ROBBINS, et al. v. WYETH-    )    CIVIL ACTION NO. 02-20081
AYERST PHARMACEUTICALS, INC., et     )
al.;                                 )
                                     )
LINDA HARMON, et al. v. WYETH-       )    CIVIL ACTION NO. 02-20082
AYERST PHARMACEUTICALS, INC., et     )
al.;                                 )
                                     )
BRENDA STALLINGS, et al. v. WYETH-   )    CIVIL ACTION NO. 02-20118
AYERST PHARMACEUTICALS, INC., et     )
al.;                                 )
                                     )
JANICE BINION, et al. v. WYETH-      )    CIVIL ACTION NO. 02-20119
AYERST PHARMACEUTICALS, INC., et     )
al.;                                 )
                                     )
MARY F. SANDERS, et al. v. WYETH-    )    CIVIL ACTION NO. 02-20121
AYERST PHARMACEUTICALS, INC., et     )
al.;                                 )
                                     )
PATRICIA MOSLEY, et al. v. WYETH-    )    CIVIL ACTION NO. 02-20122
AYERST PHARMACEUTICALS, INC., et     )
al.                                  )
```

**MEMORANDUM AND PRETRIAL ORDER NO.** _____

Bartle, C.J.                                              March 18, 2008

    Before the court is the motion of Wyeth[1] to dismiss[2]

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation ("AHP").

2. Although Wyeth styled its motion as one to dismiss, with one exception, as explained in more detail in Section II, infra, we will treat Wyeth's motion as one to enforce under the Diet Drug
                      (continued...)

the claims of thirty-five plaintiffs in the six above-captioned actions.[3]  Wyeth asserts that the claims of two plaintiffs should be dismissed because they released their claims against Wyeth.[4]  Wyeth further asserts that twenty-seven plaintiffs are ineligible to exercise their Intermediate Opt-Out rights and, therefore, their claims must be dismissed.  Finally, Wyeth asserts that the claims of six plaintiffs should be dismissed for failure to exercise any opt-out right or to provide evidence that they were diagnosed with primary pulmonary hypertension ("PPH").

I.

According to Wyeth's motions and supporting documents, plaintiffs in the above-captioned actions filed suit in Mississippi state court in or around August 2001.  (Wyeth's Mem. 4.)  Each of the plaintiffs named in the above-captioned actions

---

2.  (...continued)
Nationwide Class Action Settlement Agreement with Wyeth ("Settlement Agreement").  See Settlement Agreement § VII.B.1.  See also Pretrial Order ("PTO") No. 1415, at 8 (Aug. 28, 2000).

3.  Wyeth filed its original motion to dismiss certain plaintiffs on October 24, 2003 and its supplemental motion to dismiss certain plaintiffs on November 18, 2004.  Wyeth's original and supplemental motions sought to dismiss the claims of 208 plaintiffs.  Subsequently, the law firm representing plaintiffs in these actions elected to participate in the Global Settlement Process ("GSP").  The claims of the thirty-five plaintiffs at issue here did not settle as part of the GSP.

4.  Wyeth originally sought the dismissal of the claims of plaintiff Edward McArthur based on his purported execution of the Accelerated Implementation Option ("AIO").  Wyeth, however, withdrew its motion to dismiss Mr. McArthur's case on that ground.  In its supplemental motion, Wyeth seeks the dismissal of Mr. McArthur's claims based on his alleged failure to qualify as an Intermediate Opt-Out.

purportedly suffers from PPH and valve disease.  Many of the plaintiffs have filed their respective claims as Downstream Opt-Outs.[5]  (Wyeth's Mem. 4).  In addition, each plaintiff seeks punitive and/or exemplary damages.  (Wyeth's Mem. 4).  Wyeth subsequently removed all six[6] of these actions to the United States District Court for the Southern District of Mississippi, and the Judicial Panel on Multidistrict Litigation subsequently transferred them to MDL No. 1203.

Wyeth argues that plaintiffs' claims should be dismissed for at least one of three reasons:  (1) certain plaintiffs have settled their claims against Wyeth; (2) certain plaintiffs are medically ineligible to pursue downstream opt-out claims; and (3) all claims of PPH should be dismissed because the plaintiffs have failed to allege facts sufficient to state a claim of PPH or have presented facially invalid claims of PPH.

In response, plaintiffs argued that these actions should be remanded to state court because:  (1) all defendants did not consent to removal; and (2) every defendant is not

---

5.  The Intermediate and Back-End Opt-Outs are commonly referred to collectively as "Downstream Opt-Outs."

6.  A seventh action, <u>Lillian Chandler, et al. v. Wyeth-Ayerst Pharmaceuticals., Inc., et al.</u>, Civ. A. No. 02-20120, was dismissed with prejudice as to all parties pursuant to Local Rule of Civil Procedure 41.1(b).  <u>See</u> PTO Nos. 6795 and 7264.

diverse from every plaintiff.[7]  Plaintiffs did not address substantively any of Wyeth's arguments.

Wyeth responded with arguments substantially similar to those in its motion.  Thereafter, plaintiffs filed a first amended response to Wyeth's motion to dismiss certain plaintiffs ("First Amended Response").  Therein, in addition to the arguments previously raised, plaintiffs argue that their claims should not be dismissed because they successfully opted-out of the Settlement Agreement.  Plaintiffs also assert that "it is not the responsibility of these Plaintiffs to demonstrate to the Court the exclusionary effects of the settlement agreement on these Plaintiffs, especially when they have made numerous allegations that are not within the scope of the settlement agreement."  (First Am. Resp. 8).  Specifically, plaintiffs argue that their claims of fraud, conspiracy to commit fraud, ongoing acts of fraud, and negligent inducement and misrepresentation are not covered by the Settlement Agreement.  Finally, plaintiffs argue that we should refrain from determining eligibility issues in these cases because, as stated in PTO No. 2654, "it is for the

---

7. In addition, plaintiffs noted that they filed a motion to stay Wyeth's motion pending determination of their motions to remand.  On August 24, 2004, however, we denied plaintiffs' motions to remand the above-captioned actions.  See PTO No. 3872 (Aug. 24, 2004).  In denying the motions to remand, we determined that plaintiffs had fraudulently joined all defendants except Wyeth and its related companies and that we have subject matter jurisdiction over the actions.  Id. at 3 (citing Jamison, et al. v. Wyeth, et al., Civ. A. No. 03-20317 (E.D. Pa. Mar. 5, 2004), and Anderson v. Am. Home Prods., Co., 220 F. Supp. 2d 414 (E.D. Pa. 2002)).

opt-out court to work out when and how the opt-out issues are to be determined and what type of hearing, fact-finding, or other procedure is appropriate, consistent with fairness and local law."[8]  (First Am. Resp. 10-11 (quoting PTO No. 2654 at 5 (Nov. 25, 2002))).[9]

## II.

First, Wyeth argues that two plaintiffs have settled their claims against Wyeth.  With respect to plaintiff Arma Sheppard Harper (Civ. A. No. 02-20122), Wyeth argues that Ms. Harper elected the AIO.  In support, Wyeth submitted a copy of Ms. Harper's signed Pink Form.[10]

---

8. We reject this argument.  In PTO No. 2654, we were faced with a motion by Wyeth regarding the eligibility of plaintiffs in state court actions to exercise Downstream Opt-Out rights, wherein Wyeth sought an order requiring the state courts to determine eligibility as soon as practicable and to prohibit the courts from referring the issue to a jury at trial.  See PTO No. 2654, at 1.  We held that we were not in a position to impose a timetable on the state courts because the Settlement Agreement explicitly provides that only the opt-out court may hear a challenge to a Class Member's eligibility to exercise opt-out rights.  See id. at 3-4.  We also noted that when an opt-out proceeding is pending in federal court, the tension between enforcing the Settlement Agreement and allowing the opt-out court to determine eligibility is not present.  See id. at 4 n.1.  Here, this is precisely the case and, under the circumstances presented, we find that it is appropriate to determine whether these plaintiffs are eligible to exercise any out-opt rights.

9. Although Wyeth and plaintiffs submitted several additional rounds of briefing on the original and supplemental motions, no additional substantive arguments were made by the parties.

10. The various forms used by Class Members under the Settlement Agreement are commonly identified by color.

As with all Settlement Agreement benefit forms, the Pink Form includes a release of settled claims and a covenant not to sue. Specifically, the Pink Form states, in relevant part, that:

> In consideration of the obligations of [AHP] under the [AIO] ..., I, the undersigned claimant, individually and for my heirs, beneficiaries, agents, estate, executors, administrators, personal representatives, successors and assignees ... hereby expressly **release and forever discharge, and agree not to sue**, AHP and all other Released Parties ... as to all Settled Claims ....

Pink Form, p. 8, ¶ 19.a. (emphasis in original). We have previously held that "[u]pon execution and submission of the completed pink form, AHP is deemed to have entered into a private contract to provide all of the benefits that the class member would be entitled to receive under the Settlement Agreement regardless of whether or not the Settlement receives Final Judicial Approval." PTO No. 2111 at 2-3 (Aug. 9, 2001).

Ms. Harper signed her Pink Form on November 12, 2001. By signing the Pink Form and submitting it to the Trust, Ms. Harper relinquished her rights to seek further relief from any Released Parties as defined in the Settlement Agreement. Although Ms. Harper argues that Wyeth has not verified that she is the same individual who executed the November 12, 2001 Pink Form, she does not attempt to show that Wyeth is mistaken about her identity. In the absence of any such evidence, we find that the dismissal of Ms. Harper's claims is appropriate.

As for plaintiff Anthony Earl Sykes (Civ. A. No. 02-20119), Wyeth argues that, on November 21, 2000, Mr. Sykes entered into a Confidential Release, Indemnity and Assignment, which released any claims he may have had against Wyeth. As Wyeth relies on materials outside of the pleadings, we will treat Wyeth's motion as one for summary judgment with respect to Mr. Sykes. See Fed. R. Civ. P. 12(d). When converting a motion under Federal Rule of Civil Procedure 12(b)(6) to a motion for summary judgment, a court must "provide[] notice of its intention to convert the motion and allow[] an opportunity to submit materials admissible in a summary judgment proceeding ...." Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989). Mr. Sykes will therefore be given thirty days from the date of the accompanying order to submit materials in response to Wyeth's motion.

III.

Wyeth next argues that the claims of twenty-seven plaintiffs should be dismissed because they are not eligible to exercise the Intermediate Opt-Out right. Under the Settlement Agreement, "[a]ll Diet Drug Recipients ... who are not members of Subclasses 2(a), 2(b) or 3, and who have been diagnosed by a Qualified Physician as FDA Positive by an Echocardiogram performed between the commencement of Diet Drug use and the end of the Screening Period ... are eligible to exercise a right to Intermediate Opt-Out."[11] Settlement Agreement § IV.D.3.a.

---

11. Subclasses 2(a) and 2(b) include Class Members "who have not
(continued...)

The Settlement Agreement defines FDA Positive as "mild or greater regurgitation of the aortic valve and/or moderate or greater regurgitation of the mitral valve." Id. § I.22.a. See also id. § I.22.b. Mild or greater regurgitation of the aortic valve is defined by the Settlement Agreement as "regurgitant jet diameter in the parasternal long-axis view (or in the apical long-axis view, if the parasternal long-axis view is unavailable), equal to or greater than ten percent (10%) of the outflow tract diameter (JH/LVOTH)." Id. § I.22. Moderate or greater regurgitation of the mitral valve is defined by the Settlement Agreement as "regurgitant jet area in any apical view equal to or greater than twenty percent (20%) of the left atrial area (RJA/LAA)." Id.

Wyeth argues that the plaintiffs in this category cannot pursue their Intermediate Opt-Out claims because:

- Plaintiff Beverly Ricket (Civ. A. No. 02-20081), underwent an echocardiogram dated April 21, 2001 evidencing that Ms. Ricket's "[m]itral valve shows a mild degree of regurgitation" and her "[a]ortic valve has normal valvular function ..."; 
- Plaintiff Barbara Hall (Civ. A. No. 02-20082), underwent an echocardiogram dated April 21, 2001

---

11. (...continued)
been diagnosed by a Qualified Physician as FDA Positive by an Echocardiogram performed between the commencement of Diet Drug use and September 30, 1999 ...." Id. § II.C.2.(a)-2.(b).

evidencing that Ms. Hall's mitral valve and aortic valve have "normal structure and function";

- Plaintiff Bonnie Henderson (Civ. A. No. 02-20082), underwent an echocardiogram dated April 21, 2001 evidencing that Ms. Henderson's mitral valve and aortic valve have "normal structure and function";

- Plaintiff Pamela Thomas (Civ. A. No. 02-20082), underwent an echocardiogram dated April 22, 2001 evidencing that Ms. Thomas' "[m]itral valve shows a trace of mitral regurgitation" and her "[a]ortic valvular function is normal ...";

- Plaintiff Debbie Noland (Civ. A. No. 02-20082), underwent an echocardiogram dated April 22, 2001 evidencing that Ms. Noland's "[m]itral valve is of normal structure and function" and her "aortic valvular function is normal";

- Plaintiff Kimberly B. Boone (Civ. A. No. 02-20119), underwent an echocardiogram dated June 24, 2001 evidencing that Ms. Boone's "[m]itral valve is thickened with normal function" and her "aortic valvular function is normal";

- Plaintiff Brenda A. Green (Civ. A. No. 02-20119), underwent an echocardiogram dated April 8, 2002 evidencing that Ms. Green was diagnosed with mild mitral regurgitation and no aortic regurgitation;

- Plaintiff Estella King (Civ. A. No. 02-20119), underwent an echocardiogram dated April 21, 2001 evidencing that Ms. King's "[m]itral valve shows mild regurgitation" and her "aortic valve velocity is normal";

- Plaintiff Stephanie Owens (Civ. A. No. 02-20119), underwent an echocardiogram dated June 25, 2001 evidencing that Ms. Owens' "[m]itral valve shows normal structure and function" and her "aortic valvular function is normal";

- Plaintiff S. Gwen Harviel (Civ. A. No. 02-20119), underwent an echocardiogram dated June 25, 2001 evidencing that Ms. Harviel's "[m]itral valve shows normal structure and function" and her "aortic valvular function is normal";

- Plaintiff Robert McDaniel, Jr. (Civ. A. No. 02-20119), underwent an echocardiogram dated June 25, 2001 evidencing that Mr. McDaniel's "[m]itral valve shows ... mild mitral regurgitation" and his "aortic valvular function is normal";

- Plaintiff Melissa E. Westbrook (Civ. A. No. 02-20119), underwent an echocardiogram dated June 24, 2001 evidencing that Ms. Westbrook's "[m]itral valve is thickened with normal function" and her "aortic valvular velocity is increased to 1.73 meter [sic] and minimal systolic gradient is present";

- Plaintiff Windia Jones (Civ. A. No. 02-20122), underwent an echocardiogram dated June 25, 2001 evidencing that Ms. Jones' "[m]itral valve is thickened with mild mitral regurgitation" and her "aortic valvular function is normal";
- Plaintiff Dorothy Owens (Civ. A. No. 02-20122), underwent an echocardiogram dated June 25, 2001 evidencing that Ms. Owens' "[m]itral valve appears to be normal" and her "aortic valvular function is normal";
- Plaintiff David L. Perry (Civ. A. No. 02-20122), underwent an echocardiogram dated June 25, 2001 evidencing that Mr. Perry's "[m]itral valve ... appears to be normal" and his "aortic valvular function is normal";
- Plaintiff Francelia Rena Williams (Civ. A. No. 02-20122), underwent an echocardiogram dated April 21, 2001 evidencing that Ms. Williams' mitral valve and aortic valve have "normal structure and function";
- Plaintiff Patricia Mosley (Civ. A. No. 02-20122), underwent echocardiograms dated February 24, 2000 and February 21, 2001 evidencing that Ms. Mosley has "[m]ild mitral regurgitation" and no aortic regurgitation;
- Plaintiff Joanna Prather (Civ. A. No. 02-20122), underwent an echocardiogram dated October 27, 2001

- evidencing that Ms. Prather's "[m]itral valve shows minimal mitral regurgitation" and her "aortic valvular velocity is normal";
- Plaintiff Thelma B. Gales (Civ. A. No. 02-20118), underwent an echocardiogram dated October 26, 2001 evidencing that Ms. Gales' "[m]itral valve shows mild mitral regurgitation" and her "aortic valvular velocity is normal";
- Plaintiff Edward McArthur (Civ. A. No. 02-20118), underwent an echocardiogram dated June 25, 2001 evidencing that Mr. McArthur's "[m]itral valve is thickened with normal function" and his "aortic valvular velocity is normal";
- Plaintiff Pearl M. McGee (Civ. A. No. 02-20118), underwent an echocardiogram dated June 24, 2001 evidencing that Ms. McGee's "[m]itral valve is thickened with normal function."  There was no aortic regurgitation noted on the echocardiogram;
- Plaintiff Susan M. Davis (Civ. A. No. 02-20118), underwent an echocardiogram dated November 14, 2001 evidencing that Ms. Davis' "[m]itral valve shows mild mitral regurgitation" and her "aortic valvular velocity is normal [with a] trace of aortic insufficiency ... present";
- Plaintiff Valerie A. Givens-Rowan (Civ. A. No. 02-20118), underwent an echocardiogram dated October 28,

> 2001 evidencing that Ms. Givens-Rowan's "[m]itral valve shows mild mitral regurgitation" and her "aortic valvular velocity is normal [with] [m]inimal aortic insufficiency";

- Plaintiff Dee Andrews (Civ. A. No. 02-20121), underwent an echocardiogram dated April 21, 2001 evidencing that Ms. Andrews' mitral valve and aortic valve show "normal structure and function";

- Plaintiff Mekii N. McGee (Civ. A. No. 02-20121), underwent an echocardiogram dated October 27, 2001 evidencing that Ms. McGee's "[m]itral valve is thickened with a mild degree of mitral regurgitation" and her "aortic valvular velocity is normal";

- Plaintiff Marcia Woods (Civ. A. No. 02-20121), underwent an echocardiogram dated October 27, 2001 evidencing that Ms. Woods' "[m]itral valve is thickened with normal function" and her "aortic valvular velocity is in the upper range of normal"; and

- Plaintiff Mary F. Sanders (Civ. A. No. 02-20121), underwent an echocardiogram dated April 22, 2001 evidencing that Ms. Sanders' "[m]itral valve shows normal structure and function" and her "aortic valvular function is normal."

Based on these findings, none of these twenty-seven plaintiffs was diagnosed as FDA Positive. Although plaintiffs suggest that expert witness testimony is necessary to determine

plaintiffs' opt-out status, they have failed to present any evidence that contradicts the findings stated in the echocardiogram reports or to submit any other qualifying echocardiograms.  Plaintiffs, therefore, have failed to demonstrate that their opt-out claims are valid.  Accordingly, their claims must be dismissed.

IV.

Finally, Wyeth argues that certain plaintiffs' claims should be dismissed because either:  (1) the plaintiffs have not submitted any opt-out forms or alleged claims for PPH; or (2) the plaintiffs have presented facially invalid claims of PPH.

With respect to Sheila Bush (Civ. A. No. 02-20119), Elaine Steward (Civ. A. No. 02-20119), Ruxandra Olariv (Civ. A. No. 02-20121), Velda Yvetta Smith (Civ. A. No. 02-20121), and Sharon Ballinger (Civ. A. No. 02-20118), Wyeth contends that plaintiffs have not submitted any opt-out forms.  The Settlement Agreement approved by this court in PTO No. 1415 requires the dismissal of pending actions by individuals who did not opt-out of the Settlement Agreement.  In PTO No. 1415, we stated, in part, that:

> Effective upon Final Judicial Approval, the Settlement Agreement will release all Settled Claims against Released Parties.  Settled Claims are those claims by class members arising out of or relating to the purchase, use, manufacture, sale, dispensing, distribution, promotion, marketing, clinical investigation, administration, regulatory approval, prescription, ingestion and labeling of Pondimin and/or Redux, except claims based upon PPH and claims that are

-14-

>subject to validly exercised rights of opt-
>out under the Settlement Agreement.  Class
>members are barred from asserting any Settled
>Claim against AHP or any other Released Party
>except those class members who timely and
>properly exercise opt-out rights.

PTO No. 1415, at 71 (internal citations omitted).  Plaintiffs have failed to present any evidence, such as copies of their alleged opt-out forms, to demonstrate that they properly opted-out of the Settlement Agreement.

Additionally, although these plaintiffs presumably could pursue PPH claims, they have not made any specific allegations that they were diagnosed with PPH.  Therefore, plaintiffs have failed to make any showing that their present claims are not barred by the Settlement Agreement.  Accordingly, we will enforce the Settlement Agreement and dismiss plaintiffs' claims.

Finally, with respect to plaintiff Kevin Minor (Civ. A. No. 02-20081), Wyeth argues that Mr. Minor has presented a facially invalid claim of PPH.  Due to a lack of information, however, we are unable to determine whether Mr. Minor's claims are precluded by the Settlement Agreement.[12]  Accordingly, we will deny without prejudice Wyeth's motion to enforce against Mr. Minor.

---

12. The record before us includes only a single echocardiogram. We cannot deem Mr. Minor's PPH claim facially invalid, however, without his complete medical records.  See Settlement Agreement § I.46.

-15-

V.

For the foregoing reasons, Wyeth's motion will be granted in part and denied in part.  Wyeth's motion will be converted to one for summary judgement as to Earl Sykes and thus Mr. Sykes shall have thirty days from the date of this order to submit materials in response to Wyeth's motion.  Wyeth's motion will be denied without prejudice as to Kevin Minor.  Wyeth's motion will be granted as to the remaining thirty-three (33) plaintiffs referenced above.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 1203 |
| SHEILA BROWN, et al. v. AMERICAN HOME PRODUCTS CORPORATION | ) ) ) | CIVIL ACTION NO. 99-20593 |
| This document relates to: | ) ) | |
| DUWANDA ROBBINS, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | ) ) ) ) | CIVIL ACTION NO. 02-20081 |
| LINDA HARMON, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | ) ) ) ) | CIVIL ACTION NO. 02-20082 |
| BRENDA STALLINGS, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | ) ) ) ) | CIVIL ACTION NO. 02-20118 |
| JANICE BINION, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | ) ) ) ) | CIVIL ACTION NO. 02-20119 |
| MARY F. SANDERS, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | ) ) ) ) | CIVIL ACTION NO. 02-20121 |
| PATRICIA MOSLEY, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al. | ) ) ) ) | CIVIL ACTION NO. 02-20122 |

**PRETRIAL ORDER NO. _____**

AND NOW, on this 18th day of March, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of Wyeth to dismiss plaintiffs' claims is GRANTED IN PART and DENIED, WITHOUT PREJUDICE, IN PART;

(2)  the motion of Wyeth to dismiss is GRANTED as to:

(a) Arma Sheppard Harper, Civ. A. No. 02-20122;

(b) Beverly Ricket, Civ. A. No. 02-20081;

(c) Barbara Hall, Civ. A. No. 02-20082;

(d) Bonnie Henderson, Civ. A. No. 02-20082;

(e) Pamela Thomas, Civ. A. No. 02-20082;

(f) Debbie Noland, Civ. A. No. 02-20082;

(g) Kimberly B. Boone, Civ. A. No. 02-20119;

(h) Brenda A. Green, Civ. A. No. 02-20119;

(i) Estella King, Civ. A. No. 02-20119;

(j) Stephanie Owens, Civ. A. No. 02-20119;

(k) S. Gwen Harviel, Civ. A. No. 02-20119;

(l) Robert McDaniel, Jr., Civ. A. No. 02-20119;

(m) Melissa E. Westbrook, Civ. A. No. 02-20119;

(n) Windia Jones, Civ. A. No. 02-20122;

(o) Dorothy Owens, Civ. A. No. 02-20122;

(p) David L. Perry, Civ. A. No. 02-20122;

(q) Francelia Rena Williams, Civ. A. No. 02-20122;

(r) Patricia Mosley, Civ. A. No. 02-20122;

(s) Joanna Prather, Civ. A. No. 02-20122;

(t) Thelma B. Gales, Civ. A. No. 02-20118;

(u) Edward McArthur, Civ. A. No. 02-20118;

(v) Pearl M. McGee, Civ. A. No. 02-20118;

(w) Susan M. Davis, Civ. A. No. 02-20118;

(x) Valerie A. Givens-Rowan, Civ. A. No. 02-20118;

    (y)    Dee Andrews, Civ. A. No. 02-20121;

    (z)    Mekii N. McGee, Civ. A. No. 02-20121;

    (aa)    Marcia Woods, Civ. A. No. 02-20121;

    (bb)    Mary F. Sanders, Civ. A. No. 02-20121;

    (cc)    Sheila Bush, Civ. A. No. 02-20119;

    (dd)    Elaine Steward, Civ. A. No. 02-20119;

    (ee)    Ruxandra Olariv, Civ. A. No. 02-20121;

    (ff)    Velda Yvetta Smith, Civ. A. No. 02-20121; and

    (gg)    Sharon Ballinger, Civ. A. No. 02-20118;

(3) the motion of Wyeth to dismiss the claims of Anthony Earl Sykes, Civ. A. No. 02-20119, will be treated as a motion for summary judgment. Mr. Sykes shall submit any opposition to Wyeth's motion within thirty (30) days from the date of this Order; and

(4) the motion of Wyeth to dismiss the claims of plaintiff Kevin Minor, Civ. A. No. 02-20081, is DENIED without prejudice.

                              BY THE COURT:

                              /s/ Harvey Bartle III
                                            C.J.