IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE/ FENFLURAMINE/DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 1203 |
| SHEILA BROWN, et al. v. AMERICAN HOME PRODUCTS CORPORATION | ) ) ) ) | CIVIL ACTION NO. 99-20593 |
| This document relates to: | ) ) | |
| BRENDA STALLINGS, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | ) ) ) ) | CIVIL ACTION NO. 02-20118 |
| MARY F. SANDERS, et al. v. WYETH-AYERST PHARMACEUTICALS, INC., et al.; | ) ) ) ) ) | CIVIL ACTION NO. 02-20121 |

<u>MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO.</u>

Bartle, C.J.                                September 24, 2009

Before the court is the motion of Wyeth[1] to enforce the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement") against Class Members Pamela Dean, Patricia Lavender, and Teretha Williams-Scaife. Wyeth maintains that the claims of Ms. Dean should be dismissed for failure to exercise any opt-out right or to provide evidence that she was diagnosed with primary pulmonary hypertension ("PPH"). Wyeth asserts that Ms. Lavender and Ms. Williams-Scaife are ineligible to exercise their Intermediate Opt-Out rights and, therefore,

---

1. Prior to March 11, 2002, Wyeth was known as American Home Products Corporation ("AHP").

their claims must be dismissed. Plaintiffs have not filed a response to Wyeth's motion.

I.

According to Wyeth's motion and supporting documents, plaintiffs in the above-captioned actions filed suit in Mississippi state court in or around August 2001. Each of the plaintiffs named in the above-captioned actions purportedly suffers from PPH and valve disease. Many of the plaintiffs have filed their respective claims as Downstream Opt-Outs.[2] In addition, each plaintiff seeks punitive and/or exemplary damages. Wyeth subsequently removed these actions to the United States District Court for the Southern District of Mississippi, and the Judicial Panel on Multidistrict Litigation subsequently transferred them to MDL No. 1203.

II.

Wyeth argues that Ms. Dean's claim should be dismissed because she has not submitted any opt-out forms. The Settlement Agreement approved by this court in Pretrial Order ("PTO") No. 1415 requires the dismissal of pending actions by individuals who did not opt-out of the Settlement Agreement. In PTO No. 1415, we stated, in part, that:

> Effective upon Final Judicial Approval, the
> Settlement Agreement will release all Settled
> Claims against Released Parties.  Settled
> Claims are those claims by class members
> arising out of or relating to the purchase,

---

2. The Intermediate and Back-End Opt-Outs commonly are referred to collectively as "Downstream Opt-Outs."

> use, manufacture, sale, dispensing, distribution, promotion, marketing, clinical investigation, administration, regulatory approval, prescription, ingestion and labeling of Pondimin and/or Redux, except claims based upon PPH and claims that are subject to validly exercised rights of opt-out under the Settlement Agreement. Class members are barred from asserting any Settled Claim against AHP or any other Released Party except those class members who timely and properly exercise opt-out rights.

PTO No. 1415, at 71 (internal citations omitted). Ms. Dean has failed to present any evidence, such as copies of her alleged opt-out forms, to demonstrate that she properly opted-out of the Settlement Agreement.

Additionally, although she presumably could pursue a PPH claim, she has not made any specific allegation that she was diagnosed with PPH. Therefore, Ms. Dean has failed to make any showing that her present claim is not barred by the Settlement Agreement. Accordingly, we will enforce the Settlement Agreement and dismiss Ms. Dean's claim.

### III.

Wyeth argues that the claims of Lavender and Williams-Scaife should be dismissed because they are not eligible to exercise the Intermediate Opt-Out right. Under the Settlement Agreement, "[a]ll Diet Drug Recipients ... who are not members of Subclasses 2(a), 2(b) or 3, and who have been diagnosed by a Qualified Physician as FDA Positive by an Echocardiogram performed between the commencement of Diet Drug use and the end

of the Screening Period ... are eligible to exercise a right to Intermediate Opt-Out."[3]

The Settlement Agreement defines FDA Positive as "mild or greater regurgitation of the aortic valve and/or moderate or greater regurgitation of the mitral valve." Id. § I.22.a. See also id. § I.22.b. Mild or greater regurgitation of the aortic valve is defined by the Settlement Agreement as "regurgitant jet diameter in the parasternal long-axis view (or in the apical long-axis view, if the parasternal long-axis view is unavailable), equal to or greater than ten percent (10%) of the outflow tract diameter (JH/LVOTH)." Id. § I.22. Moderate or greater regurgitation of the mitral valve is defined by the Settlement Agreement as "regurgitant jet area in any apical view equal to or greater than twenty percent (20%) of the left atrial area (RJA/LAA)." Id.

Wyeth asserts that Ms. Lavender cannot pursue her Intermediate Opt-Opt claim because she underwent an echocardiogram dated October 25, 2001 that noted neither mitral nor aortic regurgitation. Similarly, Ms. Williams-Scaife underwent an echocardiogram dated December 20, 2002 evidencing "trivial mitral regurgitation." There was no aortic regurgitation noted on the echocardiogram.

---

3. Subclasses 2(a) and 2(b) include Class Members "who have not been diagnosed by a Qualified Physician as FDA Positive be an Echocardiogram performed between the commencement of Diet Drug use and September 30, 1999 ...." Id. § II.C.2.(a)-2.(b).

Based on these findings, neither Ms. Lavender nor Ms. Williams-Scaife was diagnosed as FDA Positive. Moreover, Ms. Lavender and Ms. Williams-Scaife have failed to present any evidence that contradicts the findings stated in the echocardiogram reports or to submit any other qualifying echocardiograms. Ms. Lavender and Ms. Williams-Scaife, therefore, have failed to demonstrate that their opt-out claims are valid. Accordingly, we will enforce the Settlement Agreement and dismiss the claims of Ms. Lavender and Ms. Williams-Scaife.

IV.

For the foregoing reasons, Wyeth's motion will be granted, the Settlement Agreement will be enforced as to each of these Class Members, and the claims of plaintiffs Pamela Dean, Patricia Lavender, and Teretha Williams-Scaife will be dismissed.